ALEXANDER B. CVITAN (SBN 81746)
E-mail: alc@rac-law.com
MARSHA M. HAMASAKI (SBN 102720)
E-mail: marshah@rac-law.com;
PETER A. HUTCHINSON (SBN 225399), and
E-mail: peterh@rac-law.com,
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>                Plaintiff,<br><br>        v.<br><br>CUSTOM SPRAY SYSTEMS, INC. a California corporation; WESCO INSURANCE COMPANY, a Delaware corporation; THE NORTH RIVER INSURANCE COMPANY, a New Jersey Corporation,<br><br>                Defendants. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>1. **MONETARY DAMAGES DUE TO EMPLOYEE BENEFIT PLANS**<br><br>2. **MONETARY DAMAGES THROUGH ENFORCEMENT OF WESCO INSURANCE COMPANY LICENSE BOND**<br><br>3. **MONETARY DAMAGES THROUGH ENFORCEMENT OF THE NORTH RIVER INSURANCE COMPANY LICENSE BOND**<br><br>4. **SPECIFIC PERFORMANCE OF OBLIGATION TO PRODUCE RECORDS FOR AUDIT**<br><br>5. **INJUNCTIVE RELIEF COMPELLING SUBMISSION OF FRINGE BENEFIT CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS**<br><br>[29 U.S.C. §§ 185, 1132(a)(3), 1132(g)(2) and 1145; 28 U.S.C. § 1367(a)] |

Plaintiff, Construction Laborers Trust Funds for Southern California Administrative Company, a Delaware limited liability company, alleges:

## JURISDICTION AND VENUE

1.     This action is brought by a fiduciary administrator on behalf of employee benefit plans against an employer and two of its license bond sureties.  It is brought to: enforce of the terms of collective bargaining agreements and plan trust agreements to recover fringe benefit contributions and related damages due by the employer on behalf of its employees (Claim 1); enforce claims against two license bonds issued to the employer, each covering a portion of the amount due (Claims 2 and 3); compel the employer to produce records for audit to determine if additional amounts are due (Claim 4); and compel the employer to timely and fully report and pay monthly fringe benefit contributions on behalf of its employees (Claim 5).  This Court has jurisdiction over Claims 1, 4 and 5 pursuant to sections 502(a)(3), 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(a)(3), 1132(g)(2) and 1145; and section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.  This Court has supplemental jurisdiction over Claims 2 and 3 pursuant to 28 U.S.C. § 1367(a).  Pursuant to ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2), venue is proper in this district for each of the following reasons: the plans are administered in this district; the employer's performance and breach took place in this district; and the employer resides or may be found in this district.

## PARTIES

2.     Plaintiff ("Adminco") is an administrator of, agent for collection for, a fiduciary to, and brings this action on behalf of the following employee benefit

plans: Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension Trust for Southern California; Laborers Annuity Plan for Southern California; Construction Laborers Vacation Trust for Southern California; Laborers Training and Re-Training Trust Fund for Southern California; Fund for Construction Industry Advancement; Center for Contract Compliance; Laborers Contract Administration Trust Fund for Southern California; Laborers' Trusts Administrative Trust Fund for Southern California; Southern California Partnership for Jobs Trust Fund; Plaster Tenders Apprenticeship and Training Trust Fund for Southern California; and Plastering Trades Administrative Trust (collectively "Trust Funds").  The Trust Funds are express trusts created by written agreements; employee benefit plans within the meaning of ERISA section 3(3), 29 U.S.C. § 1002(3); and multi-employer plans within the meaning of ERISA section 3(37)(A), 29 U.S.C. § 1002(37)(A).  The Trust Funds exist pursuant to ERISA and LMRA section 302, 29 U.S.C. § 186. Adminco and the Trust Funds' principal places of business are in the County of Los Angeles, State of California.

3.     Adminco is informed and believes, and on that basis alleges, that defendant Custom Spray Systems, Inc. ("Employer") is a corporation organized and existing under the laws of the State of California; has a principal place of business in the City of Modesto, County of Stanislaus, State of California; and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

4.     Adminco is informed and believes, and on that basis alleges, that defendant Wesco Insurance Company ("First License Bond Surety") is a corporation organized and existing under the laws of the State of Delaware; is licensed and authorized to perform and transact a surety in the State of California; and has its principal place of business in the City of New York, State of New York.

5.      Adminco is informed and believes, and on that basis alleges, that defendant The North River Insurance Company ("Second License Bond Surety") is a corporation organized and existing under the laws of the State of New Jersey; is licensed and authorized to perform and transact a surety in the State of California; and has its principal place of business in the City of Morristown, State of New Jersey.

## AGREEMENTS; LICENSE BONDS

6.      The Employer is, and was at all times during which the events giving rise to the liabilities alleged in this complaint occurred (including at all times since at least December 2002), bound to certain collective bargaining agreements of the Southern California District Council of Laborers and its affiliated local Unions (collectively "Laborers Union") known as the Construction Master Labor Agreements, including ones known as the Southern California Master Labor Agreement and the Plaster Tenders' Master Agreement.

7.      Pursuant to the Construction Master Labor Agreements, employers become – and the Employer became and is – bound to the terms and conditions of the various trust agreements that created each of the Trust Funds ("Trust Agreements").  When referenced collectively hereinafter, the Construction Master Labor Agreements and Trust Agreements are referred to as "the Agreements."

8.      Under the terms of the Agreements, employers, including the Employer, are required to submit monthly fringe benefit contributions ("Monthly Contributions") to the Trust Funds for all hours worked by (or paid to) their employees who perform work covered by the Agreements ("Covered Work").

9.     Under the terms of the Agreements, employers, including the Employer, are required to submit to the Trust Funds, with their Monthly Contributions, monthly reports, itemized by project, listing the names of their employees who performed Covered Work, their Social Security numbers, the hours of work performed by (or paid for) each, and the resulting Monthly Contributions due for them ("Monthly Reports").  The Trust Funds rely on Monthly Reports – and the accuracy of those reports – to determine the amount of Monthly Contributions due to the Trust Funds by employers and the credit toward fringe benefits to be allocated to their employees.

10.     The Agreements provide for the payment of interest on delinquent Monthly Contributions from the date due at a rate set by the trustees of the Trust Funds.  The trustees have set that rate at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California.  The Agreements also provide for the payment of liquidated damages for each month of delinquent Monthly Contributions or Monthly Reports, for each Trust Fund separately, in the amount of twenty percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater (except with respect to the Laborers Contract Administration Trust Fund for Southern California, which assesses liquidated damages at the greater of $20 or ten percent (10%)).  In addition, employers are required to pay fees for the submission of dishonored checks.

11.     The failure of employers to pay Monthly Contributions when due causes damages to the Trust Funds and its participants beyond the value of the unpaid Monthly Contributions, which are difficult to quantify.  Apart from the fees and costs incurred in litigation, the harm caused includes, but is not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on

contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise been entitled to had it not been for the delinquency of their employer. The liquidated damages provision of the Agreements was meant to compensate for the loss to the Trust Funds, which is incurred even if the Monthly Contributions for a given month are later paid. It is based on the Trust Funds' ratio of collection costs over amounts collected, which are regularly reported to the Trust Funds' trustees.

12.     Under the terms of the Agreements, employers, including the Employer, agree to subcontract Covered Work only to entities that are signatory to a Construction Master Labor Agreement applicable to the work performed. If an employer subcontracts Covered Work to a non-signatory entity, the employer becomes liable to the Trust Funds in an amount equal to the Monthly Contribution s that would have been due if the entity had been signatory (plus interest, liquidated damages and audit fees thereon).

13.     Under the terms of the Agreements, employers, including the Employer, agree not to subcontract Covered Work to entities that are delinquent to the Trust Funds. If an employer subcontracts Covered Work to such an entity the employer becomes under the terms of the Agreements liable to the Trust Funds for the Monthly Contributions due by the subcontractor and any lower-tier subcontractors.

14.     The Agreements provide the Trust Funds with specific authority to examine the payroll and business records of employers, including the Employer, to determine whether they have reported all hours worked by (or paid for) their employees who perform Covered Work, and whether they have paid the appropriate Monthly Contributions and other amounts due by them to the Trust Funds. The Agreements further provide that employers, including the Employer, must maintain

15.    records sufficient for the Trust Funds to verify proper Monthly Reporting, and, where there has been inaccurate Monthly Reporting, to determine the additional amounts due, and that the employer must pay the Trust Funds' audit fees if it is delinquent to the Trust Funds.  The Trust Funds have delegated the authority to perform such audits to Adminco.

16.    The Agreements require employers to pay the Trust Funds' attorneys' fees and costs of litigation to enforce the Agreements' foregoing terms, including the Monthly Contribution, Monthly Reporting, subcontracting and audit provisions.

17.    Adminco is informed and believes, and on that basis alleges, that in order to adhere to California Business and Professions Code § 7071.6(a), the Employer obtained a license bond from the First License Bond Surety in the penal sum required by law and filed it with the Registrar of the California State Contractors License Board.  The bond referenced in this paragraph is referred to hereinafter as the "First License Bond."  Adminco is informed and believes, and on that basis alleges, that the First License Bond covered the period January 1, 2016 through September 15, 2021.

18.    Adminco is informed and believes, and on that basis alleges, that in order to adhere to California Business and Professions Code § 7071.6(a), the Employer obtained a license bond from the Second License Bond Surety in the penal sum required by law and filed it with the Registrar of the California State Contractors License Board.  The bond referenced in this paragraph is referred to hereinafter as the "Second License Bond."  Adminco is informed and believes, and on that basis alleges, that the Second License Bond became effective September 15, 2021 and remains in effect, covering all times after September 14, 2021.

## FIRST CLAIM FOR RELIEF

**Against the Employer for Monetary Damages Due to Employee Benefit Plans**

[29 U.S.C. §§ 185, 1132(g)(2) and 1145]

19.     Adminco repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 17 above as if fully set forth here.

20.     The Employer has failed to timely submit Monthly Contributions due by it to the Trust Funds.  Pursuant to the Agreements and ERISA sections 502(g)(2) and 515,  29 U.S.C. §§ 1132(g)(2) and 1145, the Employer owes the Trust Funds a known amount of $158,983.80 for unpaid or late-paid Monthly Contributions and related damages (and/or late-submitted Monthly Reports) for certain of the months of December 2013 through September 2021 ("Known Delinquency").  The Known Delinquency consists of: $83,674.02 in unpaid Monthly Contributions; $27,564.83 in interest (through December 23, 2021); $44,624.95 in liquidated damages; and $3,120.00 in audit fees.

21.     Adminco will establish by proof at the time of trial or through dispositive motion the Known Delinquency and any additional amounts determined to be due to the Trust Funds by the Employer, including any additional Monthly Contributions, interest, liquidated damages, audit fees, fees for the submission of checks not honored by the bank upon which they were drawn, attorneys' fees and costs, and amounts owed as a result of work performed by subcontractors of the Employer (or lower-tier subcontractors).  If deemed necessary by the Court, Adminco will amend its complaint to add any additional amounts determined to be due.  Any and all conditions to the Employer's obligations under the Agreements to pay the Known Delinquency and any additional amounts due under the Agreements to the Trust Funds have been met.

22.    A portion of the Known Delinquency for certain months from December 2013 through December 2016 was discovered to be due through an audit of the Employer conducted by Adminco on March 15, 2017.

23.    Under the terms of the Agreements and ERISA section 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D), Adminco is entitled to an award of its attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Against the First License Bond Surety for Monetary Damages
### Through Enforcement of First License Bond

[28 U.S.C. § 1367(a); Cal. Bus & Prof. Code § 7071.11(d)]

24.    Adminco repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 22 above as if fully set forth here.

25.    The Trust Funds are "Laborers" under California Civil Code ("Civil Code") § 8024(b).  As such, they are beneficiaries of the First License Bond under California Business and Professions Code ("Business and Professions Code") § 7071.5(e).

26.    Adminco submitted a claim against the First License Bond for Monthly Contributions due by the Employer to the Trust Funds ("First License Bond Claim"). Pursuant to Business and Professions Code §§ 7071.5(e) and 7071.11(a), and, upon information and belief, the terms of the First License Bond, the First License Bond Surety is required to pay the Trust Funds up to the penal sum of the First License Bond for the failure of its principal, the Employer, to remit Monthly Contributions to the Trust Funds.

27. The First License Bond Surety has not paid the First License Bond Claim as required by the above-referenced statutes, and, upon information and belief, the terms of the First License Bond.

28. Adminco brings this claim for relief on behalf of the Trust Funds under Business and Professions Code § 7071.11(d) to enforce the terms of the First License Bond to recover a portion of the amount due by the Employer to the Trust Funds (up to the penal sum of the First License Bond).

## THIRD CLAIM FOR RELIEF

**Against the Second License Bond Surety for Monetary Damages**

**Through Enforcement of Second License Bond**

[28 U.S.C. § 1367(a); Cal. Bus & Prof. Code § 7071.11(d)]

29. Adminco repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 27 above as if fully set forth here.

30. The Trust Funds are "Laborers" under California Civil Code ("Civil Code") § 8024(b). As such, they are beneficiaries of the Second License Bond under California Business and Professions Code ("Business and Professions Code") § 7071.5(e).

31. Adminco submitted a claim against the Second License Bond for Monthly Contributions due by the Employer to the Trust Funds ("Second License Bond Claim"). Pursuant to Business and Professions Code §§ 7071.5(e) and 7071.11(a), and, upon information and belief, the terms of the Second License Bond, the Second License Bond Surety is required to pay the Trust Funds up to the penal sum of the Second License Bond for the failure of its principal, the Employer, to

1   remit Monthly Contributions to the Trust Funds.

2

3       32.    The Second License Bond Surety has not paid the Second License Bond

4   Claim as required by the above-referenced statutes, and, upon information and

5   belief, the terms of the Second License Bond.

6

7       33.    Adminco brings this claim for relief on behalf of the Trust Funds under

8   Business and Professions Code § 7071.11(d) to enforce the terms of the Second

9   License Bond to recover a portion of the amount due by the Employer to the Trust

10   Funds (up to the penal sum of the Second License Bond).

11

12   ## FOURTH CLAIM FOR RELIEF

13   **Against the Employer for Specific Performance of Obligation**

14   **to Produce Records for Audit**

15   [29 U.S.C. §§ 1132(a)(3) and 1132(g)(2)(E)]

16

17       34.    Adminco repeats, realleges and incorporates by reference each and every

18   allegation contained in paragraphs 1 through 32 above as if fully set forth here.

19

20       35.    Adminco has requested that the Employer produce its books and records

21   for audit.  The Employer has failed to fully produce its books and records.  Adminco

22   requests that the Court exercise its authority under ERISA sections 502(a)(3) and

23   502(g)(2)(E), 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2)(E) to order the Employer to

24   comply with its obligation under the Agreements and ERISA to fully produce its

25   books and records in order for Adminco to complete an audit to determine if

26   additional amounts are due.

27

28       36.    An award of attorneys' fees and costs is provided for by Agreements and

under ERISA sections 502(g)(1) and/or 502(g)(2), 29 U.S.C. § 1132(g)(1) and/or 1132(g)(2).

## FIFTH CLAIM FOR RELIEF

**Against the Employer for Injunctive Relief Compelling Submission of Fringe Benefit Contributions to Employee Benefit Plans**

[29 U.S.C. §§ 1132(a)(3) and 1132(g)(2)(E)]

37.     Adminco repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 35 above as if fully set forth here.

38.     The Employer has repeatedly failed to timely submit Monthly Reports and Monthly Contributions.

39.     By reason of the Employer's failure to comply with its Monthly Reporting and Contribution obligations, the Trust Funds, its participants and/or its beneficiaries have suffered and will continue to suffer hardship and actual and impending irreparable injury and damage for at least the following reasons. First, the Trust Funds must provide credit each month to participants and beneficiaries, including the Employer's employees, toward eligibility for fringe benefits (such as health insurance and pensions) based on the number of hours they worked, which is determined from Monthly Reports. Second, the amount of benefits payable to all participants and beneficiaries for health insurance and pension claims, including those employed by the Employer, is actuarially determined on the basis of funds projected to be received from contributing employers (including the Employer). Third, health insurance is not provided to participants and beneficiaries, including the Employer's employees, after a certain period of non-payment of Monthly Contributions on their behalf. Fourth, vacation pay, which is distributed by the

Construction Laborers Vacation Trust for Southern California (one of the Trust Funds), is not paid to employees, including the Employer's employees, for hours of work for which their employer has not submitted Monthly Contributions.  Fifth, the Trust Funds have a legal obligation to take steps to collect amounts due by delinquent employers and thus the Employer's ongoing delinquency results in an ongoing drain on Trust Funds resources.  And, in addition, the failure of the Employer to itemize its work by project undermines the Trust Funds' ability to take steps to collect delinquent amounts through asserting project-specific claims, such as payment bond claims, stop payment notices and mechanics' liens.  Sixth, the Trust Funds lose investment income on late-paid and unpaid Monthly Contributions.

40.     The Trust Funds have no adequate or speedy remedy at law.  They therefore request that this Court exercise its authority under ERISA sections 502(a)(3) and 502(g)(2)(E), 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2)(E), to issue preliminary and permanent injunctive relief ordering the Employer to comply with its obligations under the Agreements and ERISA section 515, 29 U.S.C. § 1145, to fully disclose its employees' Covered Work on its Monthly Reports, itemized by project, and timely submit them each month with full payment of the Monthly Contributions due.

41.     An award of attorneys' fees and costs is provided for by Agreements and under ERISA sections 502(g)(1) and/or 502(g)(2), 29 U.S.C. § 1132(g)(1) and/or 1132(g)(2)).

///
///
///
///
///

**WHEREFORE, Adminco prays for judgment as follows:**

<u>ON ADMINCO'S FIRST CLAIM FOR RELIEF</u>

[Against the Employer for Monetary Damages Due to Employee Benefit Plans]

A.      For $83,674.02  in unpaid Monthly Contributions, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(A).

B.      For $27,564.83 in interest through December 23, 2021 on unpaid or late paid Monthly Contributions at the rate of five percent above the variable prime rate set by the Federal Reserve Board of San Francisco, California, plus such additional interest that has or does hereafter accrue from December 23, 2021, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(B).

C.      For $44,624.95 in liquidated damages for unpaid and late-paid Monthly Contributions at, for each of the Trust Funds separately, the greater of 20% or $25 (except with respect to the Laborers Contract Administration Trust Fund for Southern California, for which liquidated damages are sought at the greater 10% or $20), as required by the Agreements and 29 U.S.C. § 1132(g)(2)(C).

D.      For $3,120.00 in audit fees, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(E).

E.      For, according to proof, any additional Monthly Contributions, interest, liquidated damages, audit fees, insufficient funds check fees, and amounts owed as a result work performed by any subcontractors of the Employer (or lower-tier subcontractors) determined to be due, pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2) and 1145.

F.     For reasonable attorneys' fees and costs of suit, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(D).

G.     For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

## ON ADMINCO'S SECOND CLAIM FOR RELIEF

[Against the First License Bond Surety for Monetary Damages Through Enforcement of the First License Bond]

A.     For enforcement of the First License Bond pursuant to California Business and Professions Code §§ 7071.5(e) and 7071.11(a).

B.     For the penal sum of the First License Bond, plus interest at the rate or rates required by law, including California Labor Code § 218.6, from the respective days the Monthly Contributions providing the basis for the First License Bond Claim became due.

C.     For reasonable attorneys' fees and costs.

D.     For such other relief that this Court deems appropriate.

## ON ADMINCO'S THIRD CLAIM FOR RELIEF

[Against the Second License Bond Surety for Monetary Damages Through Enforcement of the Second License Bond]

A.     For enforcement of the Second License Bond pursuant to California

Business and Professions Code §§ 7071.5(e) and 7071.11(a).

B.     For the penal sum of the Second License Bond, plus interest at the rate or rates required by law, including California Labor Code § 218.6, from the respective days the Monthly Contributions providing the basis for the Second License Bond Claim became due.

C.     For reasonable attorneys' fees and costs.

D.     For such other relief that this Court deems appropriate.

## ON ADMINCO'S FOURTH CLAIM FOR RELIEF

[Against the Employer for Specific Performance of Obligation
to Produce Records for Audit]

A.     For the issuance of injunctive relief pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the Employer and its managing officers, managing employees, agents and successors, as well as all those in active concert or participation with any one or more of them, to submit to an audit of the Employer's records from at least January 1, 2017 through the date of the audit, to fully cooperate with Adminco with respect to the audit in order for Adminco to determine the total amount due to the Trust Funds by the Employer, and, specifically, to produce to Adminco the following payroll and business records – and any other records determined by Adminco to be necessary to conduct a full audit – for inspection, examination and copying:

A.1.   All of the Employer's payroll and employee records, as well as any other records that might be relevant to a determination of the work performed by

the Employer, its employees, its subcontractors, its lower-tier subcontractors and the employees of the Employer's subcontractors and lower-tier subcontractors, including but not limited to payroll journals, employee earnings records, certified payroll records, payroll check books and stubs, cancelled payroll checks, payroll time cards and state and federal tax returns (and all other state and federal tax records), as well as labor distribution journals and any other records that might be relevant to an identification of the employees who performed work for the Employer, its subcontractors or lower-tier subcontractors, or which might be relevant to a determination of the projects on which the Employer, its employees, its subcontractors, lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work, including any records that provide the names, addresses, Social Security numbers, job classification or the number of hours worked by any one or more employee;

A.2.   All of the Employer's job files for each contract, project or job on which the Employer, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors worked, including but not limited to all correspondence, agreements and contracts between the Employer and any general contractor, subcontractor, owner, builder or developer, as well as all field records, job records, notices, project logs, supervisors' diaries and notes, employees' diaries and notes, memoranda, releases and any other records that relate to the supervision of the Employer's employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors and lower-tier subcontractors, or the projects on which the Employer, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

A.3.   All of the Employer's records related to cash receipts, including

but not limited to the Employer's cash receipts journals, accounts receivable journals, accounts receivable subsidiary ledgers and billing invoices for all contracts, projects and jobs on which the Employer, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

A.4.   All of the Employer's bank statements, including but not limited to those for all checking, savings and investment accounts;

A.5.   All of the Employer's records related to disbursements, including but not limited to vendors' invoices, cash disbursement journals, accounts payable journals, check registers and all other records which indicate disbursements;

A.6.   All collective bargaining agreements between the Employer and any trade union, and all records of contributions by the Employer to any trade union trust fund; and

A.7.   All records related to the formation, licensing, renewal or operation of the Employer.

B.   For reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or 1132(g)(2).

C.   For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

///

///

## ON ADMINCO'S FIFTH CLAIM FOR RELIEF

[Against the Employer for Injunctive Relief Compelling Submission of

Fringe Benefit Contributions to Employee Benefit Plans]

A.     For the issuance of injunctive relief pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the Employer and its managing officers, managing employees, agents and successors, as well as all those in active concert or participation with any one or more of them, to deliver, or cause to be delivered to the Trust Funds:

A.1.   All past due monthly fringe benefit contribution report forms due by the Employer to the Trust Funds, fully completed to indicate hours of work performed by the Employer's employees for which fringe benefit contributions are due by the Employer and the corresponding amounts of fringe benefit contributions due by the Employer to the Trust Funds, if any, or, if no such hours of work were performed for a given month, an indication on the report form of that fact.

A.2.   No later than 4:30 p.m. on the 15th day of each month for the duration of the Agreements:

A.2(a).  Truthfully and accurately completed Monthly Report(s) covering all of the Employer's accounts with the Trust Funds, collectively identifying all persons for whom Monthly Contributions are owed to the Trust Funds for the previous month and their Social Security numbers, and, itemized by person and project, the hours of work performed for which Monthly Contributions are due;

A.2(b).  An affidavit or declaration from a managing officer or other managing agent of the Employer attesting under penalty of perjury to the

1    completeness, truthfulness and accuracy of each Monthly Report submitted; and

2

3              A.2(c).  A cashier's check or checks made payable to the

4    "Construction Laborers Trust Funds for Southern California" totaling the full amount

5    of Monthly Contributions due to the Trust Funds for the previous month.

6

7       B.    For reasonable attorneys' fees and costs of suit, as required by the

8    Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or 1132(g)(2).

9

10      C.    For such other relief that this Court deems appropriate, pursuant to any

11   authority of the Court, including but not limited to the authority established by

12   29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

13

14   DATED: December 28, 2021          REICH, ADELL & CVITAN
                                       A Professional Law Corporation
15

16                                     By:_____/s/ Peter A. Hutchinson___
17                                        PETER A. HUTCHINSON
                                          Attorneys for Plaintiff
18

19

20

21

22

23

24

25

26

27

28